# Exhibit 2

*Execution Version*

# LIMITED GUARANTY

LIMITED GUARANTY, dated as of September 22, 2022 (this "Guaranty"), made by Thai Union North America, Inc., a California corporation (the "Limited Guarantor"), in favor of each of the Lenders (as hereinafter defined) and Fortress Credit Corp., a Delaware corporation ("Fortress"), as collateral agent for the Lenders (in such capacity, together with its successors and assigns, if any, the "Collateral Agent") pursuant to the Financing Agreement referred to below.

W I T N E S S E T H:

WHEREAS, pursuant to the Financing Agreement, dated as of January 22, 2021 (such agreement, as amended, restated, supplemented or otherwise modified from time to time, including pursuant to the Amendment (as hereinafter defined) and including any replacement agreement therefor, the "Financing Agreement"), by and among Red Lobster Intermediate Holdings LLC, a Delaware limited liability company (the "Parent"), Red Lobster Management LLC, a Delaware limited liability company (the "Administrative Borrower"), each other subsidiary of the Parent listed as a "Borrower" on the signature pages thereto (together with the Administrative Borrower and each other Person (as defined therein) that executes a joinder agreement and becomes a "Borrower" thereunder, each a "Borrower" and, collectively, the "Borrowers"), each subsidiary of the Parent listed as a "Guarantor" on the signature pages thereto (together with the Parent and each other Person that executes a joinder agreement and becomes a "Guarantor" thereunder or otherwise guaranties all or any part of the Obligations (as defined therein), each a "Guarantor" and, collectively, the "Guarantors"), the lenders from time to time party thereto (each a "Lender" and, collectively, the "Lenders"), the Collateral Agent, and Fortress, as administrative agent for the Lenders (in such capacity, together with its successors and assigns in such capacity, the "Administrative Agent" and together with the Collateral Agent, each an "Agent" and, collectively, the "Agents"), the Lenders have agreed to make certain term loans (each a "Loan" and, collectively, the "Loans"), to the Borrowers;

WHEREAS, the Limited Guarantor directly or indirectly owns 49.00% of the issued and outstanding shares of Equity Interests of the Borrowers;

WHEREAS, Thai Union Group Public Company Limited (the "Affiliate Guarantor") has agreed to act as a limited guarantor pursuant to the Guarantee made by the Affiliate Guarantor to the Collateral Agent, dated as of the date hereof (the "Affiliate Limited Guaranty"; the Affiliate Limited Guaranty, together with this Guaranty, collectively, the "Limited Guarantees");

WHEREAS, it is a condition precedent to that certain Amendment No. 1 to Financing Agreement, dated as of the date hereof (the "Amendment"), by and among the Parent, the Borrowers, the Guarantors, the Lenders and the Agents, which amends certain provisions of the Financing Agreement, that the Limited Guarantor shall have executed and delivered to the Collateral Agent this Guaranty guaranteeing repayment of $65,000,000 of the Loans (the "Specified Amount"); and

WHEREAS, the Limited Guarantor has determined that its execution, delivery and performance of this Guaranty directly benefit, and are within the purposes and in the business interests of, the Limited Guarantor; and

WHEREAS, the Guaranteed Obligations of the Guarantor hereunder and the Guaranteed Obligations (as defined in the Affiliate Limited Guaranty) of the Affiliate Guarantor arising under the Affiliate Limited Guaranty shall not exceed an aggregate amount equal to the Specified Amount.

NOW, THEREFORE, in consideration of the premises and the agreements herein and in order to induce the Lenders to enter into the Amendment and make and maintain the Loans and other financial accommodations pursuant to the Financing Agreement, the Limited Guarantor hereby agrees with the Agents and the Lenders as follows:

SECTION 1.   Definitions.

(a)   Reference is hereby made to the Financing Agreement for a statement of the terms thereof. All terms used in this Guaranty which are defined in the Financing Agreement and not otherwise defined herein shall have the same meanings herein as set forth therein.

(b)   As used in this Guaranty, the following terms have the meanings set forth below:

(i)   "Guaranteed Obligations" has the meaning specified therefor in SECTION 2(a).

(ii)   "Guaranty Liability Event" means the occurrence of an Event of Default under Section 9.01(a), 9.01(f) or 9.01(g) of the Financing Agreement.

(iii)   "Net Worth" shall mean, with respect to any Person, on a consolidated basis, as of any date of determination, total shareholder's equity of such Person all as determined in accordance with GAAP.

(iv)   "Paid in Full" means payment in cash of all Obligations (for the avoidance of doubt, other than Contingent Indemnity Obligations) owing under the Loan Documents according to the terms thereof (and specifically including interest accrued after the commencement of any Insolvency Proceeding), whether or not the same would be or is allowed or disallowed in whole or in part in any Insolvency Proceeding.

(v)   "Tangible Net Worth" shall mean, with respect to any Person at any date, the Net Worth of such Person at such date, excluding, however, from the determination of the total assets at such date, (a) all goodwill, capitalized organizational expenses, capitalized research and development expenses, trademarks, trade names, copyrights, patents, patent applications, licenses and rights in any thereof, and other intangible items (excluding accrued and deferred taxes), (b) all unamortized debt discount and expense, and (c) any write-up in the book value of any asset resulting from a revaluation thereof.

(vi) "Permitted Indebtedness" means: (a) Indebtedness outstanding on the date hereof and listed on Schedule 8(d) and any Permitted Refinancing thereof; and (b) any Subordinated Indebtedness and any Permitted Refinancing thereof.

(vii) "Permitted Liens" means: (a) Liens imposed by law for Taxes that are not yet due or are being contested in good faith by proper proceedings which stay the imposition of any Lien resulting from the non-payment thereof and with respect to which adequate reserves have been set aside for the payment thereof in accordance with GAAP; (b) Carriers', warehousemen's, mechanics', materialmen's, repairmen's and other like Liens imposed by applicable Law, arising in the ordinary course of business and securing obligations that are not overdue or are being contested in good faith by proper proceedings which stay the imposition of any Lien resulting from the non-payment thereof and with respect to which adequate reserves have been set aside for the payment thereof in accordance with GAAP; (c) Pledges and deposits made in the ordinary course of business in compliance with workers' compensation, unemployment insurance and other social security laws or regulations, other than any Lien imposed by ERISA; (d) Deposits to secure the performance of bids, trade contracts and leases (other than Indebtedness), statutory obligations, surety and appeal bonds, performance bonds and other obligations of a like nature incurred in the ordinary course of business; (e) Liens existing on the date hereof and listed on Schedule 8(c) and any Permitted Refinancings thereof; (f) Possessory Liens in favor of brokers and dealers arising in connection with the acquisition or disposition of investments; and (g) Liens arising solely by virtue of any statutory or common law provisions relating to banker's liens, liens in favor of securities intermediaries, rights of setoff or similar rights and remedies as to deposit accounts or securities accounts or other funds maintained with depository institutions or securities intermediaries.

(viii) "Permitted Refinancing" means, with respect to any Person, any Indebtedness issued in exchange for, or the net proceeds of which are used to extend, refinance, renew, replace, defease or refund (collectively, to "Refinance"), the Indebtedness being Refinanced (or previous refinancings thereof constituting a Permitted Refinancing); provided, that (a) the principal amount (or accreted value, if applicable) of such Permitted Refinancing does not exceed the principal amount (or accreted value, if applicable) of the Indebtedness so Refinanced (plus unpaid accrued interest and premiums thereon and underwriting discounts, defeasance costs, fees, commissions and expenses), (b) the weighted average life to maturity of such Permitted Refinancing is greater than or equal to the weighted average life to maturity of the Indebtedness being Refinanced, (c) such Permitted Refinancing shall not require any scheduled principal payments due prior to the Termination Date in excess of, or prior to, the scheduled principal payments due prior to such Termination Date for the Indebtedness being Refinanced, (d) if the Indebtedness being Refinanced is Subordinated Indebtedness, such Permitted Refinancing shall also be Subordinated Indebtedness, (e) such Permitted Refinancing shall be otherwise on terms not materially less favorable to the Agents and Lenders than those contained in the documentation governing the Indebtedness being Refinanced, (f) the interest rate applicable to any such Permitted Refinancing shall not exceed the interest rate then applicable to the Indebtedness being Refinanced and (g) the Indebtedness being Refinanced is not recourse to any Loan Party or any of its Subsidiaries that is liable on account of the obligations other than those Persons which were obligated with respect to the Indebtedness being Refinanced.

3

(ix) "Specified Amount" has the meaning specified therefor in the recitals hereto.

(x) "Subordinated Indebtedness" means Indebtedness of the Limited Guarantor the terms of which (including, without limitation, payment terms, interest rates, covenants, remedies, defaults and other material terms) are satisfactory to the Administrative Agent and which has been expressly subordinated in right of payment to all Indebtedness of the Limited Guarantor under this Guaranty by the execution and delivery of a subordination agreement in form and substance satisfactory to the Administrative Agent.

(xi) "Termination Date" means the earliest of the date on which: (A) all the Loans and the other Obligations shall have been Paid in Full and the Financing Agreement and the other Loan Documents shall have been terminated (other than any terms thereof which are expressly stated to survive termination of the Financing Agreement and the other Loan Documents), or (B) the Loan Parties shall have retained both a permanent Chief Financial Officer and Chief Executive Officer, with each such Person's qualifications and experience being reasonably acceptable to the Administrative Agent (it being understood and agreed that any such Person who possesses substantial executive level restaurant, retail or consumer experience in the United States shall be deemed reasonably acceptable, and that the Administrative Agent shall not otherwise unreasonably withhold, condition or delay any such acceptance) and either (1) the Parent shall have delivered a Compliance Certificate pursuant to Section 7.01(a)(iv) of the Financing Agreement for each of the fiscal quarters of the Parent and its Subsidiaries ending February 26, 2023 and May 28, 2023, in each case, demonstrating compliance with the financial covenant set forth in Section 7.03(c) of the Financing Agreement for the applicable fiscal period covered by each such Compliance Certificate or (2) the Parent shall have delivered Compliance Certificates pursuant to Section 7.01(a)(iv) of the Financing Agreement for two (2) consecutive fiscal quarters of the Parent and its Subsidiaries, in each case, demonstrating compliance with the financial covenant set forth in 7.03(a) of the Financing Agreement for the applicable fiscal period covered by each such Compliance Certificate.

SECTION 2.    Guaranty.

(a) The Limited Guarantor (i) unconditionally, absolutely and irrevocably guarantees the payment by the Borrowers, within ten (10) Business Days following receipt of notice from the Collateral Agent that a Guaranty Liability Event has occurred, of all Loans and other Obligations under the Loan Documents, whether for principal, interest, fees, expense reimbursements (including, without limitation, all interest, fees and expense reimbursements that accrue after the commencement of any Insolvency Proceeding of any Borrower, whether or not a claim for post filing interest, fees or expense reimbursements are allowed in such proceeding), commissions, indemnifications or otherwise (such obligations to the extent not paid by the Borrowers, being the "Guaranteed Obligations"), and (ii) agrees to pay any and all expenses (including reasonable counsel fees and expenses) incurred by the Agents and the Lenders in enforcing any rights under this Guaranty (collectively, the "Enforcement Costs"). Without limiting the generality of the foregoing, the Limited Guarantor's liability shall extend to all amounts that constitute part of the Guaranteed Obligations and would be owed by the Borrowers to the Agents and the Lenders under the Loan Documents but for the fact that they are unenforceable or not allowable due to the existence of an Insolvency Proceeding involving any

4

Borrower.  In no event shall the obligations of the Limited Guarantor exceed the maximum amount such Limited Guarantor could guarantee, under any Debtor Relief Law.

(b)     Upon the occurrence of a Guaranty Liability Event, the Collateral Agent may declare the Guaranteed Obligations due and payable hereunder, in which case, the Limited Guarantor shall be obligated to satisfy the Guaranteed Obligations ten (10) Business Days following receipt of notice from the Collateral Agent, and the Agents and the Lenders shall be entitled to enforce all Guaranteed Obligations of the Limited Guarantor hereunder after such due date.

(c)     Notwithstanding anything to the contrary contained in this Guaranty, the liability of the Limited Guarantor under this Guaranty and the recourse of the Collateral Agent hereunder shall be limited solely to the repayment of up to the Specified Amount in respect of the Guaranteed Obligations, plus any other amounts described under SECTION 2(a) above, including the Enforcement Costs; provided that, for the avoidance of doubt, the Guaranteed Obligations of the Guarantor hereunder and the Guaranteed Obligations (as defined in the Affiliate Limited Guaranty) of the Affiliate Guarantor arising under the Affiliate Limited Guaranty shall not exceed an aggregate amount equal to the Specified Amount.

SECTION 3.     <u>Guaranty Absolute; Continuing Guaranty; Assignments</u>.

(a)     Subject to SECTION 2(c), the Limited Guarantor hereby guarantees that the Guaranteed Obligations will be paid strictly in accordance with the terms of the Loan Documents, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of any Agent or any Lender with respect thereto.  The Limited Guarantor agrees that this Guaranty constitutes a guaranty of payment when due and not of collection and waives any right to require that any resort be made by any Agent or any Lender to any Collateral.  The obligations of the Limited Guarantor under this Guaranty are independent of the Guaranteed Obligations, and a separate action or actions may be brought and prosecuted against the Limited Guarantor to enforce such obligations, irrespective of whether any action is brought against any Loan Party or whether any Loan Party is joined in any such action or actions.  The liability of the Limited Guarantor under this Guaranty shall be irrevocable, absolute and unconditional irrespective of, and the Limited Guarantor hereby irrevocably waives any defenses it may now or hereafter have in any way relating to, any or all of the following:

(i)     any lack of validity or enforceability of any Loan Document or any document, agreement, or instrument relating thereto;

(ii)    any change in the time, manner or place of payment of, or in any other term of, all or any of the Guaranteed Obligations, or any other amendment or waiver of or any consent to departure from any Loan Document, including, without limitation, any increase in the Guaranteed Obligations resulting from the extension of additional credit to any Loan Party or otherwise;

(iii)   any taking, exchange, release or non-perfection of any lien on or security interest in any Collateral, or any taking, release or amendment or waiver of or consent to departure from any other guaranty, for all or any of the Guaranteed Obligations;

5

(iv) the existence of any claim (other than payment in full of the Guaranteed Obligations), set-off, defense or other right that the Limited Guarantor may have at any time against any Person, including, without limitation, any Agent or any Lender, whether in connection with this Guaranty or any Loan Document or the transactions contemplated herein, therein or in any unrelated transaction;

(v) any change, restructuring or termination of the corporate, limited liability company or partnership structure or existence of any Loan Party; or

(vi) any other circumstance (including, without limitation, any statute of limitations) or any existence of or reliance on any representation by any Agent or any Lender that might otherwise constitute a defense available to, or a discharge of, any Loan Party or any other guarantor or surety.

(b) This Guaranty is a continuing guaranty and shall remain in full force and effect until the Termination Date; provided that the obligations of the Limited Guarantor set forth in SECTION 5 shall continue to survive the termination of this Guaranty.

(c) Notwithstanding anything to contrary set forth herein (including, without limitation, SECTION 3(b)), this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment by the Limited Guarantor under this Guaranty is rescinded or must otherwise be returned by any Agent, any Lender or any other Person to the Limited Guarantor or the Borrowers, all as though such payment had not been made.

SECTION 4. _Waivers_. The Limited Guarantor hereby waives (a) promptness, diligence, notice of acceptance and any other notice with respect to any of the Guaranteed Obligations and this Guaranty, (b) notice of acceptance and notice of the incurrence of any Obligation by any Borrower, (c) notice of any actions taken by any Agent, any Lender or any Loan Party under any Loan Document or any other agreement or instrument related thereto, (d) all other notices, demands and protests, and all other formalities of every kind in connection with the enforcement of the Obligations or of the obligations of the Limited Guarantor hereunder, the omission of or delay in which, but for the provisions of this SECTION 4, might constitute grounds for relieving the Limited Guarantor of its obligations hereunder, (e) any right to compel or direct any Agent or any Lender to seek payment or recovery of any amounts owed under this Guaranty from any one particular fund or source or to exhaust any right or take any action against any Loan Party or any other Person or any Collateral, and (f) any requirement that any Agent or any Lender protect, secure, perfect or insure any security interest or Lien or any property subject thereto, or exhaust any right or take any action against any Loan Party or any other Person or any Collateral. The Limited Guarantor agrees that the Agents and the Lenders shall have no obligation to marshal any assets in favor of the Limited Guarantor or against, or in payment of, any or all of the Obligations. The Limited Guarantor acknowledges that it will receive direct and indirect benefits from the financing arrangements contemplated herein and in the Financing Agreement and that the waivers set forth in this SECTION 4 are knowingly made in contemplation of such benefits. The Limited Guarantor hereby waives any right to revoke this Guaranty, and acknowledges that this Guaranty is continuing in nature and applies to all Guaranteed Obligations, whether existing now or in the future.

SECTION 5.  Subrogation.  The Limited Guarantor will not exercise any rights that it may now or hereafter acquire against any Loan Party or any other guarantor (including the Affiliate Guarantor) that arise from the existence, payment, performance or enforcement of the Limited Guarantor's obligations under this Guaranty, including, without limitation, any right of subrogation, reimbursement, exoneration, contribution or indemnification and any right to participate in any claim or remedy of the Agents and the Lenders against any Loan Party or any other guarantor (including the Affiliate Guarantor) or any Collateral, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, including, without limitation, the right to take or receive from any Loan Party or any other guarantor (including the Affiliate Guarantor), directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security solely on account of such claim, remedy or right, unless and until the Termination Date.  If any amount shall be paid to the Limited Guarantor in violation of the immediately preceding sentence at any time prior to the Termination Date, such amount shall be held in trust for the benefit of the Agents and the Lenders and shall forthwith be paid to the Administrative Agent, to be credited and applied to the Guaranteed Obligations and all other amounts payable under this Guaranty, whether matured or unmatured, in accordance with the terms of this Guaranty and the Financing Agreement.  If (a) the Limited Guarantor shall make payment to the Agents and the Lenders of all or any part of the Guaranteed Obligations, (b) all of the Guaranteed Obligations and all other amounts payable under this Guaranty shall be paid in full (other than Contingent Indemnity Obligations) and (c) the Termination Date shall have occurred, the Collateral Agent will, at the Limited Guarantor's request and expense, execute and deliver to the Limited Guarantor appropriate documents, without recourse and without representation or warranty, necessary to evidence the transfer by subrogation to the Limited Guarantor of an interest in the Guaranteed Obligations resulting from the payment by the Limited Guarantor.

SECTION 6.  The Limited Guarantor's Subordination of Rights to the Agents and the Lenders.

(a)  In the event that the Limited Guarantor should for any reason (i) advance or lend monies to any Loan Party for any reason whatsoever, whether or not such funds are used by such Loan Party to make payment or payments in respect of the Obligations, (ii) make any payment for and on behalf of any Loan Party in respect of the Guaranteed Obligations, or (iii) make any payment to any Agent or any Lender in total or partial satisfaction of the Limited Guarantor's obligations and liabilities hereunder, the Limited Guarantor hereby agrees that any and all rights that the Limited Guarantor may have or acquire to collect or to be reimbursed by any Loan Party (or by any other obligor, guarantor (including the Affiliate Guarantor), endorser or surety of the Obligations), whether the Limited Guarantor's rights of collection or reimbursement arise by way of subrogation to the rights of any Agent or any Lender or otherwise, shall in all respects be subordinate, inferior and junior to the Agents' and the Lenders' rights to collect and enforce payment, performance and satisfaction of the Obligations then remaining, until such time as the Obligations are fully paid and satisfied.

(b)  The Limited Guarantor further agrees to refrain from attempting to collect and/or enforce any of the Limited Guarantor's aforesaid rights against any Loan Party (or any other obligor, guarantor (including the Affiliate Guarantor), endorser or surety of the Obligations), arising by way of subrogation or otherwise, until such time as the Obligations then remaining in favor of the Agents and the Lenders are fully paid and satisfied.

(c) In the event that the Limited Guarantor should for any reason whatsoever receive any payment or payments from any Loan Party (or any other obligor, guarantor (including the Affiliate Guarantor), endorser or surety of the Obligations) on any such amount or amounts that such Loan Party (or such a third party) may owe to the Limited Guarantor for any of the reasons stated above, the Limited Guarantor agrees to accept such payment or payments for and on behalf of the Agents and the Lenders, advising such Loan Party (or the third party payee) of such a fact, and the Limited Guarantor unconditionally agrees to immediately deliver such funds to the Agents and the Lenders, with such funds being held by the Limited Guarantor during any interim period, in trust for the Agents and the Lenders.

SECTION 7. *Representations and Warranties*. The Limited Guarantor hereby represents and warrants to the Agents and the Lenders as follows:

(a) The Limited Guarantor (i) is a corporation, duly organized, validly existing and in good standing under the laws of the state, province or other applicable jurisdiction of its organization as set forth on the first page hereof, (ii) has all requisite corporate power and authority to conduct its business as now conducted and as presently contemplated and to execute and deliver this Guaranty and each other Loan Document to which the Limited Guarantor is a party, and to consummate the transactions contemplated hereby and thereby and (iii) is duly qualified to do business and is in good standing in each jurisdiction in which the character of the properties owned or leased by it or in which the transaction of its business makes such qualification necessary, except to the extent failure to be so qualified could not reasonably be expected to have a material adverse effect on the Limited Guarantor, its business or its ability to perform its obligations under this Guaranty.

(b) The execution, delivery and performance by the Limited Guarantor of this Guaranty (i) as been duly authorized by all necessary corporate action on the part of the Limited Guarantor, (ii) does not and will not contravene its articles of incorporation or bylaws, or any applicable law or any material contractual restriction binding on or otherwise affecting the Limited Guarantor or any of its properties, (iii) does not and will not result in or require the creation of any Lien upon or with respect to any of its properties and (iv) does not and will not result in any default, noncompliance, suspension, revocation, impairment, forfeiture or nonrenewal of any permit, license, authorization or approval applicable to its operations or any of its properties, which, in the case of clause (iv), could not reasonably be expected to have a material adverse effect on the Limited Guarantor, its business or its ability to perform its obligations under this Guaranty.

(c) No authorization or approval or other action by, and no notice to or filing with, any Governmental Authority is required in connection with the due execution, delivery and performance by the Limited Guarantor of this Guaranty or any other Loan Document to which the Limited Guarantor is or will be a party, except those which have been obtained on or prior to the date hereof.

(d) Each of this Guaranty and the other Loan Documents to which the Limited Guarantor is or will be a party, when executed and delivered, is and will be a legal, valid and binding obligation of the Limited Guarantor, enforceable against the Limited Guarantor in accordance with its terms, except as may be limited by applicable bankruptcy, insolvency,

8

reorganization, moratorium or other similar laws affecting creditors' rights generally or general equitable principles relating to enforceability.

(e) There is no pending or, to the knowledge of the Limited Guarantor, threatened action, suit or proceeding affecting the Limited Guarantor or its properties before any court or other Governmental Authority or any arbitrator that (i) if adversely determined, could reasonably be expected to have a material adverse effect on the Limited Guarantor, its business or its ability to perform its obligations under this Guaranty or (ii) relates to this Guaranty or any other Loan Document to which the Limited Guarantor is a party or any transaction contemplated hereby or thereby.

(f) The Limited Guarantor (i) has read and understands the terms and conditions of the Financing Agreement and the other Loan Documents, and (ii) now has and will continue to have independent means of obtaining information concerning the affairs, financial condition and business of the Borrowers and the other Loan Parties, and has no need of, or right to obtain from any Agent or any Lender, any credit or other information concerning the affairs, financial condition or business of the Borrowers or the other Loan Parties that may come under the control of any Agent or any Lender.

(g) The Limited Guarantor hereby acknowledges and agrees that the Agents and the Lenders have extended credit to the Borrowers in reliance upon the obligations of the Limited Guarantor hereunder.

SECTION 8.    <u>Covenants</u>.  The Limited Guarantor hereby covenants and agrees as follows:

(a) The Limited Guarantor shall provide to each Agent:

(i) as soon as available, and in any event within 45 days after the end of each fiscal quarter of the Limited Guarantor, a balance sheet and profit and loss statement of the Limited Guarantor as at the end of such fiscal quarter and for the period commencing at the end of the immediately preceding fiscal year of the Limited Guarantor and ending with the end of such fiscal quarter, all in reasonable detail and certified by an Authorized Officer of the Limited Guarantor as fairly presenting, in all material respects, the financial position of the Limited Guarantor as of the end of such fiscal quarter and the results of operations and cash flows of the Limited Guarantor for such fiscal quarter, in accordance with GAAP consistently applied, subject to the absence of footnotes and normal year-end adjustments; and

(ii) as soon as available, and in any event within 120 days after the end of each fiscal year of the Limited Guarantor, a balance sheet and profit and loss statement of the Limited Guarantor as at the end of such fiscal year, all in reasonable detail and certified by an Authorized Officer of the Limited Guarantor as fairly presenting, in all material respects, the financial position of the Limited Guarantor as of the end of such fiscal year and the results of operations and cash flows of the Limited Guarantor for such fiscal year, in accordance with GAAP consistently applied, subject to the absence of footnotes and normal year-end adjustments.

(b) The Limited Guarantor shall (i) maintain and preserve in full force and effect its existence and (ii) comply in all respects with all Requirements of Law applicable in

9

respect of the conduct of its business and the ownership and operation of its properties, except to the extent that the failure to so comply could not reasonably be expected to have a material adverse effect on the Limited Guarantor, its business or its ability to perform its obligations under this Guaranty.

(c) The Limited Guarantor shall not create, incur, assume or suffer to exist any Lien upon or with respect to any of its properties, whether now owned or hereafter acquired; file or suffer to exist under the Uniform Commercial Code or any Requirement of Law of any jurisdiction, a financing statement (or the equivalent thereof) that names it or any of its Subsidiaries as debtor; sign or suffer to exist any security agreement authorizing any secured party thereunder to file such financing statement (or the equivalent thereof) other than Permitted Liens.

(d) The Limited Guarantor shall not create, incur, assume, guarantee or suffer to exist, or otherwise become or remain liable with respect to any Indebtedness other than Permitted Indebtedness.

(e) The Limited Guarantor shall not make any Disposition, whether in one transaction or a series of related transactions, of all or any part of its business, property or assets, whether now owned or hereafter acquired (or agree to do any of the foregoing), other than the Dispositions set forth on SCHEDULE 8(e).

(f) The Limited Guarantor shall not, if a Guaranty Liability Event has occurred and continues or if, after giving effect to any of the following, it would not be in compliance with Section 8(i) hereof, (i) make any distribution, direct or indirect, to any of its equity holders, (ii) make any repurchase, redemption, retirement, defeasance, sinking fund or similar payment, purchase or other acquisition for value, direct or indirect, of the interests of any of its equity holders, (iii) make any payment to retire, or to obtain the surrender of, any outstanding warrants, options or other rights for the purchase or acquisition of the interests of any of its equity holders, or (iv) make any other distribution of property, assets, warrants, rights, options, obligations or securities to any of its equity holders. For the avoidance of doubt, this paragraph shall not restrict the Limited Guarantor from making any payment or reimbursement of any fees, costs, or expenses permitted under Section 8(h) hereof.

(g) The Limited Guarantor shall not amend, modify or otherwise change any of its Governing Documents in any way that (i) restricts the ability of the Limited Guarantor to use its assets to pay its obligations hereunder or (ii) would otherwise adversely affect the rights of the Agents and the Lenders hereunder.

(h) The Limited Guarantor shall not enter into, renew, extend or be a party to, or permit any of its Subsidiaries to enter into, renew, extend or be a party to, any transaction or series of related transactions (including, without limitation, the purchase, sale, lease, transfer or exchange of property or assets of any kind or the rendering of services of any kind) with any Affiliate, except transactions consummated in the ordinary course of business in a manner and to an extent consistent with past practice and necessary or desirable for the prudent operation of its business, for fair consideration and on terms no less favorable to it than would be obtainable in a comparable arm's length transaction with a Person that is not an Affiliate thereof.

(i)     The Limited Guarantor and its Subsidiaries on a consolidated basis shall maintain at all times Tangible Net Worth equal to or greater than $170,000,000.

SECTION 9.     <u>Notices.</u>

(a)     <u>Notices Generally</u>. All notices and other communications provided for hereunder shall be in writing and shall be delivered by hand, sent by registered or certified mail (postage prepaid, return receipt requested), overnight courier, or email.  In the case of notices or other communications to the Limited Guarantor, they shall be sent to the address set forth on its signature page hereto. All notices or other communications sent in accordance with this Section 9, shall be deemed received on the earlier of the date of actual receipt or 3 Business Days after the deposit thereof in the mail; <u>provided</u>, that (i) notices sent by overnight courier service shall be deemed to have been given when received and (ii) notices by email shall be deemed to have been given as provided in <u>Section 9(b)</u>, <u>provided</u>, <u>further</u> that notices to any Agent pursuant shall not be effective until received by such Agent.

(b)     <u>Electronic Communications</u>

(i)     Each Agent and the Limited Guarantor may, in its discretion, agree to accept notices and other communications to it hereunder by electronic communications pursuant to procedures approved by it; provided, that approval of such procedures may be limited to particular notices or communications.

(ii)     Unless the Administrative Agent otherwise prescribes, (A) notices and other communications sent to an e-mail address shall be deemed received upon the sender's receipt of an acknowledgement from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgement), and (B) notices or communications posted to an Internet or intranet website shall be deemed received upon the deemed receipt by the intended recipient, at its e-mail address as described in the foregoing clause (A), of notification that such notice or communication is available and identifying the website address therefor; <u>provided</u>, that for both clauses (A) and (B) above, if such notice, email or other communication is not sent during the normal business hours of the recipient, such notice or communication shall be deemed to have been sent at the opening of business on the next Business Day for the recipient.

SECTION 10.     <u>CONSENT TO JURISDICTION; SERVICE OF PROCESS AND VENUE</u>.  ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS GUARANTY OR ANY OTHER LOAN DOCUMENT SHALL BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK IN THE COUNTY OF NEW YORK OR OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, AND, BY EXECUTION AND DELIVERY OF THIS AGREEMENT, THE LIMITED GUARANTOR HEREBY IRREVOCABLY ACCEPTS IN RESPECT OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS; PROVIDED, HOWEVER, THAT ANY SUIT SEEKING ENFORCEMENT AGAINST ANY COLLATERAL OR OTHER PROPERTY MAY BE BROUGHT, AT COLLATERAL AGENT'S OPTION, IN THE COURTS OF ANY JURISDICTION WHERE THE COLLATERAL AGENT ELECTS TO

BRING SUCH ACTION OR WHERE SUCH COLLATERAL OR OTHER PROPERTY MAY BE FOUND. THE LIMITED GUARANTOR HEREBY IRREVOCABLY CONSENTS TO THE SERVICE OF ANY AND ALL LEGAL PROCESS, SUMMONS, NOTICES AND DOCUMENTS IN ANY SUIT, ACTION, OR PROCEEDING BROUGHT IN THE UNITED STATES OF AMERICA ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY OR ANY OTHER LOAN DOCUMENT BY THE MAILING (BY REGISTERED MAIL OR CERTIFIED MAIL, POSTAGE PREPAID) OR DELIVERING OF A COPY OF SUCH PROCESS TO THE LIMITED GUARANTOR AT THE LIMITED GUARANTOR'S ADDRESS FOR NOTICES ON ITS SIGNATURE PAGE HERETO. THE LIMITED GUARANTOR AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. NOTHING HEREIN SHALL AFFECT THE RIGHT OF THE AGENTS AND THE LENDERS TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW. THE LIMITED GUARANTOR HEREBY EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE JURISDICTION OR LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN ANY SUCH COURT REFERRED TO ABOVE AND ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. TO THE EXTENT THAT THE LIMITED GUARANTOR HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OR OTHERWISE) WITH RESPECT TO ITSELF OR ITS PROPERTY, THE LIMITED GUARANTOR HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS GUARANTY AND THE OTHER LOAN DOCUMENTS.

SECTION 11. <u>WAIVER OF JURY TRIAL, ETC.</u> THE LIMITED GUARANTOR HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS GUARANTY OR THE OTHER LOAN DOCUMENTS, OR UNDER ANY AMENDMENT, WAIVER, CONSENT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT DELIVERED OR WHICH IN THE FUTURE MAY BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR ARISING FROM ANY FINANCING RELATIONSHIP EXISTING IN CONNECTION WITH THIS GUARANTY OR THE OTHER LOAN DOCUMENTS, AND AGREES THAT ANY SUCH ACTION, PROCEEDING OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. THE LIMITED GUARANTOR CERTIFIES THAT NO OFFICER, REPRESENTATIVE, AGENT OR ATTORNEY OF ANY AGENT OR ANY LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT ANY AGENT OR ANY LENDER WOULD NOT, IN THE EVENT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM, SEEK TO ENFORCE THE FOREGOING WAIVERS. THE LIMITED GUARANTOR HEREBY ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE AGENTS AND THE LENDERS ENTERING INTO THIS AGREEMENT.

SECTION 12. <u>Taxes</u>.

(a) All payments made by the Limited Guarantor hereunder or under any other Loan Document shall be made in accordance with the terms of the Financing Agreement and shall be made without set-off, counterclaim, deduction or other defense. All such payments shall be made free and clear of and without deduction for any present or future Taxes. If the Limited Guarantor shall be required to deduct or to withhold any Taxes from or in respect of any amount payable hereunder or under any other Loan Document:

(i) the amount so payable shall be increased to the extent necessary so that after making all required deductions and withholdings (including Taxes on amounts payable to the Agents and the Lenders pursuant to this sentence) the Agents and the Lenders receive an amount equal to the sum they would have received had no such deduction or withholding been made,

(ii) the Limited Guarantor shall make such deduction or withholding,

(iii) the Limited Guarantor shall pay the full amount deducted or withheld to the relevant taxation authority in accordance with applicable law, and

(iv) as promptly as possible thereafter, the Limited Guarantor shall send the Agents and the Lenders an official receipt (or, if an official receipt is not available, such other documentation as shall be satisfactory to the Agents and the Lenders) showing payment. In addition, the Limited Guarantor agrees to pay any present or future taxes, charges or similar levies which arise from any payment made hereunder or from the execution, delivery, performance, recordation or filing of, or otherwise with respect to, this Guaranty or any other Loan Document, other than Other Taxes.

(b) The Limited Guarantor hereby indemnifies and agrees to hold the Agents and the Lenders harmless from and against Taxes or Other Taxes (including, without limitation, any Taxes or Other Taxes imposed by any jurisdiction on amounts payable under this SECTION 12) paid by any Agent or any Lender and any liability (including, without limitation, penalties, interest and expenses for nonpayment, late payment or otherwise) arising therefrom or with respect thereto, whether or not such Taxes or Other Taxes were correctly or legally asserted. This indemnification shall be paid within 30 days from the date on which any Agent or any Lender makes written demand therefor, which demand shall identify the nature and amount of Taxes or Other Taxes.

(c) If the Limited Guarantor fails to perform any of its obligations under this SECTION 12, the Limited Guarantor shall indemnify the Agents and the Lenders for any taxes, interest or penalties that may become payable as a result of any such failure. The obligations of the Limited Guarantor under this SECTION 12, shall survive the termination of this Guaranty and the payment of the Guaranteed Obligations and all other amounts payable hereunder.

SECTION 13. Miscellaneous.

(a) The Limited Guarantor will make each payment to be made hereunder in lawful money of the United States of America and in immediately available funds to

13

the Collateral Agent, for the benefit of the Agents and the Lenders, at such address specified by the Collateral Agent from time to time by notice to the Limited Guarantor.

(b) No amendment or waiver of any provision of this Guaranty and no consent to any departure by the Limited Guarantor therefrom shall in any event be effective unless the same shall be in writing and signed by the Limited Guarantor and the Collateral Agent, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(c) No failure on the part of any Agent or any Lender to exercise, and no delay in exercising, any right hereunder or under any other Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder or under any other Loan Document preclude any other or further exercise thereof or the exercise of any other right. The rights and remedies of the Agents and the Lenders provided herein and in the other Loan Documents are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law. The rights of the Agents and the Lenders under any Loan Document against any party thereto are not conditional or contingent on any attempt by the Agents and the Lenders to exercise any of their rights under any other Loan Document against such party or against any other Person.

(d) Any provision of this Guaranty which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.

(e) This Guaranty shall (i) be binding on the Limited Guarantor and its successors and assigns, and (ii) inure, together with all rights and remedies of the Agents and the Lenders hereunder, to the benefit of the Agents and the Lenders and their respective successors, transferees and assigns. Any Agent or any Lender may assign or otherwise transfer its rights and obligations under the Financing Agreement or any other Loan Document to any other Person, and such other Person shall thereupon become vested with all of the benefits in respect thereof granted to such Agent or such Lender herein or otherwise. None of the rights or obligations of the Limited Guarantor hereunder may be assigned or otherwise transferred without the prior written consent of the Collateral Agent, and any such assignment without the prior consent of the Collateral Agent shall be null and void.

(f) This Guaranty and the other Loan Documents reflect the entire understanding of the parties with respect to the transactions contemplated hereby and thereby and shall not be contradicted or qualified by any other agreement, oral or written, before the date hereof.

(g) Section headings herein are included for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

(h) THIS GUARANTY AND THE OTHER LOAN DOCUMENTS (UNLESS EXPRESSLY PROVIDED TO THE CONTRARY IN ANOTHER LOAN DOCUMENT IN RESPECT OF SUCH OTHER LOAN DOCUMENT) SHALL BE GOVERNED

BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK.

(i) Delivery of an executed signature page of this Guaranty by facsimile or electronic mail shall be effective as delivery of a manually executed counterpart of this Guaranty. Any party delivering an executed counterpart of this Guaranty by facsimile or electronic mail also shall deliver an original executed counterpart of this Guaranty, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Guaranty.

[*Remainder of page intentionally left blank*]

IN WITNESS WHEREOF, the Limited Guarantor has caused this Guaranty to be executed by an officer thereunto duly authorized, as of the date first above written.

THAI UNION NORTH AMERICA, INC.

By: _____
Name: Bryan Rosenberg
Title: Chief Executive Officer

Address for notices:

Thai Union North America, Inc.
2150 E. Grand Avenue, El Segundo, CA 90245
Phone 424-397-8601
E: legal@thaiunion.com

With a copy to (which shall not constitute notice):
E: Jenny.Wang@thaiunion.com

## SCHEDULE 8(c)

## LIENS

1. Liens against Thai Union North America, Inc.'s interest in its subsidiaries and the proceeds thereof, in relation to the Secured Loan Agreement, in favor of Thai Union Group Public Company Limited

## SCHEDULE 8(d)

## INDEBTEDNESS

1. Loan Agreement, dated as of October 10, 2016, by and between Thai Union North America, Inc. and Thai Union Group Public Company Limited, as amended by the Loan Amendment Agreement, dated as of October 7, 2020 (the "<u>Unsecured Loan Agreement</u>").

2. Loan Agreement, dated as of July 21, 2016, by and between Thai Union North America, Inc. and Thai Union Public Company Limited, as amended by (i) the Amendment to Loan Agreement, dated as of January 13, 2017, (ii) the Loan Amendment Agreement, dated as of January 2, 2019, and (iii) the Loan Amendment Agreement, dated as of June 16, 2022 (the "<u>Secured Loan Agreement</u>").

## SCHEDULE 8(e)

## DISPOSITIONS

1. None.