USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/7/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FORTRESS CREDIT CORP.,

Plaintiff,

-against-

THAI UNION NORTH AMERICA, INC.,

Defendant.

1:24-cv-08399-MKV

**ORDER GRANTING IN PART MOTION *IN LIMINE***

MARY KAY VYSKOCIL, United States District Judge:

The Court is in receipt of the motion *in limine* filed by Defendant Thai Union North America, Inc. ("TUNA") to exclude certain evidence from the bench trial scheduled to commence in this case on October 19, 2026. [ECF No. 38] (the "Motion").

The Motion is supported by a memorandum of law, [ECF No. 39] (the "Memorandum" or "Mem."), and the declaration of Danielle L. Rose and exhibits attached thereto, [ECF No. 40] (the "Rose Declaration" or "Rose Decl." and "Rose Declaration Exhibits" or "Rose Decl. Exhs.," respectively). Plaintiff Fortress Credit Corp. ("Fortress") opposed. [ECF No. 42] (the "Opposition" or "Opp."). The Opposition is supported by the declaration of Marc C. Palmer and exhibits attached thereto, [ECF No. 43] (the "Palmer Declaration" or "Palmer Decl." and the "Palmer Declaration Exhibits" or "Palmer Decl. Exhs.," respectively). TUNA replied. [ECF No. 44] (the "Reply"). The Reply is supported by the supplemental declaration of Daniel L. Rose and exhibits attached thereto. [ECF No. 45] (the "Supplemental Rose Declaration" or "Supp. Rose Decl." and "Supplemental Rose Declaration Exhibits" or "Supp. Rose Decl. Exhs.," respectively). TUNA has requested oral argument. [ECF No. 41].

## BACKGROUND

Because the broader "background facts" have not yet been established, Opp. at 7 n.1[1] (noting that some of Fortress' recitation of the "background facts" is at this stage necessarily "based on anticipated witness testimony at trial"), the Court recounts only the undisputed facts material to the disposition of the Motion.

This case concerns a limited guaranty agreement between the Parties. Rose Decl. Exh. 2 (the "Limited Guaranty"). The Parties entered into the Limited Guaranty in connection with an amended financing agreement governing the terms of a loan Fortress made to certain non-party entities affiliated with the seafood restaurant chain Red Lobster (collectively, "Red Lobster"). Rose Decl. Exh. 1 (the "Amended Financing Agreement"). TUNA was the guarantor under the Limited Guaranty. *See* Limited Guaranty at 2.

The pending Motion concerns the Limited Guaranty's termination provision. As relevant here, the Limited Guaranty terminated upon occurrence of the following requirement:

> the Loan Parties [Red Lobster] shall have retained both a permanent Chief Financial Officer and Chief Executive Officer, with each such Person's qualifications and experience being reasonably acceptable to the Administrative Agent [Fortress] (it being understood and agreed that any such Person who possesses substantial executive level restaurant, retail or consumer experience in the United States shall be deemed reasonably acceptable, and that the Administrative Agent [Fortress] shall not otherwise unreasonably withhold, condition or delay any such acceptance) . . .

Limited Guaranty § 1(b)(xi) (the "Appointment Clause").[2]

TUNA argues that the Appointment Clause was satisfied "by September 2023" with the appointment of Horace G. Dawson, III, and Phillip B. McClain as CEO and CFO, respectively, of Red Lobster. Mem. at 5–6. Fortress disagrees, arguing that those appointments did not meet the

[1] The Court cites throughout to the ECF-stamped pagination.

[2] Fortress "has elected not to pursue" the theory of "satisfaction of [an] alternative requirement concerning compliance certificates." Opp. at 9 n.5.

requirement of the Appointment Clause. *See* Opp. at 1 ("The parties thus agreed in the operative clause that, to trigger termination, any permanent CFO and CEO must have *both* qualifications *and* experience that are appropriate for their positions and reasonably acceptable to Fortress.").

As TUNA reads the Appointment Clause, the Limited Guaranty "terminated when Red Lobster . . . appointed a [CEO and CFO] that Fortress agreed were 'reasonably acceptable'" based on their qualifications and experience (the "Reasonably-Acceptable Prong") "or that had 'substantial executive level restaurant, retail or consumer experience in the United States,' in which case they were *deemed* reasonably acceptable" (the "Deemed-Acceptable Prong"). Mem. at 5 (quoting the Appointment Clause). "Fortress further agreed that it would not 'otherwise unreasonably withhold, condition or delay' acceptance" (the "Otherwise Prong"). Mem. at 5 (quoting the Appointment Clause). In TUNA's view, this reading of the Limited Guaranty is the only possible construction of the contract and renders certain evidence categorically irrelevant.

On that basis, TUNA seeks to exclude the following evidence:

1. Anticipated testimony by Susan Pavel, Red Lobster's Chief People Officer, that Mr. Dawson lacked the qualifications necessary to serve as CEO (the "Pavel Testimony" or "Category 1");

2. Anticipated testimony by Fortress's expert witness Paul Halpern that Messrs. Dawson and McClain lacked the qualifications necessary to serve as CEO and CFO, respectively (the "Halpern Qualifications Testimony" or "Category 2");

3. Mr. Halpern's empirical study concerning the typical backgrounds of CEOs and CFOs (the "Halpern Empirical Study" or "Category 3");

4. Mr. Halpern's opinions about hypothetical bases upon which Fortress could reasonably have withheld acceptance of the appointments of Messrs. Dawson and McClain to serve as CEO and CFO, respectively (the "Halpern Hypotheticals" or "Category 4"); and

5. Mr. Halpern's opinions about Fortress's intentions in negotiating the Limited Guaranty (the "Halpern Intentions Opinion" or "Category 5").

Mem. at 20.

Fortress reads the Appointment Clause differently. In its view, "at trial, the Court will need to determine not only whether Messrs. McClain and Dawson possessed substantial executive level experience (Mr. McClain did not), but also whether their respective experience made them qualified for the CFO and CEO roles, respectively." Opp. at 21.

## ANALYSIS

The Court agrees with TUNA that the Appointment Clause is unambiguous. As such, parol evidence is inadmissible. *See RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 315 (2d Cir. 2003) ("Parol evidence may be admitted to explain a writing only when the terms of the writing itself are ambiguous."); *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) ("It is well established that a court may not admit extrinsic evidence in order to determine the meaning of an unambiguous contract.").[3] Similarly, evidence regarding the uncommunicated, unilateral intent of one party is irrelevant. *See Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) ("The secret or subjective intent of the parties is irrelevant."); *Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989, 1003 (2d Cir. 1974) (Parties' "subjective or hidden intent is not competent to determine the meaning of the words they employed.").

The Appointment Clause must be read and applied according to its plain terms to "deem[] reasonably acceptable" "any such Person who possesses substantial executive level restaurant, retail or consumer experience in the United States." Appointment Cause. It is hornbook law that, "if a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999) (citation modified).

[3] The Parties have stipulated that "the Limited Guaranty is governed by New York law." [ECF No. 49-1], Joint Findings of Fact ¶ 19; *see also id.*, Joint Conclusions of Law ¶¶ 4, 5.

This basic tenet of contract construction renders most, if not all of the evidence in question "untethered to the contractual standard at issue" and thus "irrelevant." *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 11-CV-681 KBF, 2015 WL 5459662, at *8 (S.D.N.Y. Sept. 16, 2015); *see also* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of some consequence in determining the action."). Such evidence is properly excluded. *See Adore Me, Inc. v. NPC Global Corp.*, No. 18cv4498 (DLC), 2019 WL 2866043, at *2 (S.D.N.Y. July 2, 2019) ("preclud[ing] the introduction of parol evidence" before "bench trial" where "contract [was] unambiguous").

Fortress expressly agreed that, to the extent that Messrs. Dawson and McClain had "substantial executive level restaurant, retail or consumer experience in the United States," they were "deemed reasonably acceptable" for their appointments. Appointment Clause ("it being understood and agreed that any such Person who possesses substantial executive level restaurant, retail or consumer experience in the United States shall be deemed reasonably acceptable"). To that extent, evidence about their "qualifications," *id.*, is of no "consequence in determining [this] action," Fed. R. Evid. 401(b), and will be excluded at trial.

By Fortress' admission, there is no dispute that Mr. Dawson had such experience. *See* Opp. at 6 (conceding that Mr. Dawson "had substantial executive level experience in the restaurant industry as Red Lobster's long-tenured General Counsel"). Accordingly, the Pavel Testimony (Category 1) is wholly irrelevant. The Halpern Qualifications Testimony (Category 2) is likewise irrelevant, at least to the extent that it concerns Mr. Dawson. So, too, is the Halpern Empirical Study (Category 3) with respect to CEOs. The same is true of the Halpern Hypotheticals (Category 4) with respect to Mr. Dawson. Moreover, if the evidence establishes that Mr. McClain had "substantial executive level restaurant, retail or consumer experience in the United States,"

Appointment Clause, ***any*** proffered evidence in Categories 2–4 will be irrelevant and will not be admitted at trial. Finally, the Halpern Intentions Opinion (Category 5) is also wholly irrelevant to the extent that it is offered to resolve purported ambiguity in the Appointment Clause or to prove Fortress' uncommunicated, unilateral intent.

None of Fortress's counterarguments is convincing. First of all, the Court does not by this ruling "dismiss[] substantive portions of the case." Opp. at 13 n.8 (quoting *Scottsdale Ins. Co. v. McGrath*, No. 19-cv-7477 (LJL), 2024 WL 4434943, at *2 (S.D.N.Y. Oct. 7, 2024)). There is a live dispute between the Parties regarding whether Mr. McClain "possesse[d] substantial executive level restaurant, retail or consumer experience in the United States," Appointment Clause, such that his appointment as CFO satisfied the Deemed-Acceptable Prong of the Appointment Clause. *See* Opp. at 21 (Arguing that "Mr. McClain did not" possess "substantial executive level experience"). The Court does not by this Order exclude evidence relevant to that dispute.[4]

The Court declines Fortress's invitation to neglect the "literal language" of the Appointment Clause. Opp. at 13 (quoting *Kimball Assocs., P.A. v. Homer Cent. Sch. Dist.*, No. 00-CV-897(HGM)(GJD), 2000 WL 1720751, at *4 (N.D.N.Y. Nov. 9, 2000)). Fortress argues, somewhat contortedly, that TUNA's reading of the Deemed-Acceptable Prong is based on the "infer[ence]" of an "unstated override by the parenthetical despite the operative clause that precedes it." Opp. at 16. The Court finds it rather uncontroversial to insist, as Fortress does, that the parenthetical Deemed-Acceptable Prong "relate[s] back to the clause it follows," namely the Reasonably-Acceptable Prong. *Id.* at 15 (collecting cases). But the Deemed-Acceptable Prong unambiguously relates back by "deem[ing]" the Reasonably-Acceptable Prong satisfied: The

[4] Conceivably, then, Mr. Halpern might have some margin of latitude within which to opine about the extent of Mr. McClain's executive-level experience. The Court does not, however, express in this Order any particular confidence in the "weight" of or "methodolog[y]" underlying such opinions. Opp. at 24 n.13 (noting that certain of TUNA's objections to the proffered opinions of Mr. Halpern would be better assessed in terms of "weight [rather than] relevance" or, perhaps, "under Daubert").

appointed CFO's "qualifications and experience" must be "reasonably acceptable to" Fortress, ***but*** if he "possesses substantial executive level restaurant, retail or consumer experience in the United States," he "shall be ***deemed*** reasonably acceptable." Appointment Clause (emphasis added).

Contrary to Fortress' contention, Opp. at 16, this does not "render[]" the Reasonably-Acceptable Prong "meaningless." *Id.* (citation modified). The Court understands that "experience" and "qualifications" "do, in fact, have different meanings." *Id.* at 5. The Parties decided, however, to "deem[]" "substantial executive level restaurant, retail or consumer experience in the United States . . . reasonably acceptable," even if Fortress might otherwise have found the appointees' "qualifications and experience" unacceptable. Appointment Clause. That is what the Parties' expressly contracted for, and that is how the word "deem" works. *Barbosa da Cunha v. Freden*, 175 F.4th 61, 76 (2d Cir. 2026) ("To 'deem' a term is to treat it as if (1) it were really something else, or (2) it has qualities that it does not have." (citation modified, quoting BLACK'S LAW DICTIONARY (7th ed. 1999))), *cert. granted sub nom. Rhoney, v. Barbosa da Cunha, Ricardo A.*, No. 26-104, 2026 WL 2942994 (U.S. Oct. 1, 2026).

Nor does this reading of the Appointment Clause conflict in any way with the Otherwise Prong. *Contra* Opp. at 17–18. The Deemed-Acceptable and the Otherwise Prong operate together as a "proviso which restricted Fortress's right" to find appointments unacceptable. Reply at 8 (citing *Chesapeake Energy Corp. v. Bank of New York Mellon Trust Co.*, N.A., 773 F.3d 110 (2d Cir. 2014)). "'Or otherwise' can . . . mean 'in a different way or manner,' [and] it can also simply 'refer to something that is different from something already mentioned.'" *Barbosa da Cunha*, 175 F.4th at 78 (citation modified). Here, the Appointment Clause was satisfied, and the Limited Guaranty terminated, if Red Lobster appointed a CEO and CFO and "each such Person's qualifications and experience [were] reasonably acceptable to" Fortress. Appointment Clause. But it was also satisfied if the appointees "possesse[d] substantial executive level restaurant, retail

or consumer experience in the United States," regardless of Fortress's non-acceptance, or if Fortress's acceptance was "unreasonably with[e]ld, condition[ed] or delay[ed]." *Id.*

Nothing about this reading "produce[s]" the kind of "absurd result" that the law disfavors, Opp. at 19 (quoting *Pro. Fighters League, LLC v. Takeover Indus., Inc.*, 770 F. Supp. 3d 718, 723–24 (S.D.N.Y. 2025)), or otherwise "strains . . . common sense," Opp. at 19 (citation modified, quoting *Trireme Energy Holdings, Inc. v. RWE Renewables Ams., LLC*, 757 F. Supp. 3d 445, 489–90 (S.D.N.Y. 2024)); *see* Reply at 10 (persuasively demonstrating that "courts applying New York law find contractual terms commercially unreasonable or absurd only in extreme circumstances, such as where a party is deprived of the 'very fruits of the contract it bargained for'" (quoting *Pro. Fighters*, 770 F. Supp. 3d at 725–29 and collecting cases)). Instead, it is a perfectly logical reading of an unambiguous clause that the Parties might have agreed upon "for all sorts of reasons." *Fundamental Long Term Care Holdings, LLC v. Cammeby's Funding LLC*, 20 N.Y.3d 438, 445–46, 985 N.E.2d 893 (N.Y. 2013) (rejecting argument that "the payment of $1,000 for a membership interest valued at $33 million [was] commercially unreasonable" after noting that, in any event, "an inquiry into commercial reasonableness is only warranted where a contract is ambiguous").

In a last-ditch effort to salvage otherwise irrelevant evidence, Fortress argues that, "at minimum," the Appointment Clause is ambiguous, such that "the challenged evidence cannot be excluded before trial." Opp. at 25 (citation modified). Of course, the Court agrees that it "may find ambiguity even though both parties argue that the contract is unambiguous." *Id.* at 26 (citing *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 236 (2d Cir. 2008)). But this one really is unambiguous.

Fortress has advanced two alternative readings of the Appointment Clause, neither of which makes any sense or can be reconciled with hornbook law of contract construction. First, leading up to the Motion, Fortress "conceded that" the Deemed-Acceptable Prog "turned only on

*experience*," but nevertheless insisted "on analyzing whether the executives had substantial executive level experience ***for their respective roles***." Reply at 4–5 (citation modified, second emphasis added, collecting record citations reflecting this position). The words "for their respective roles" nowhere appears in the Appointment Clause, and the Court may not rewrite the contract to achieve an unstated intent of one party. *See Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404, 920 N.E.2d 359 (2009) ("Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." (citation modified)).

Fortress' position shifted somewhat in response to the pending Motion. Fortress now argues that the "substantial executive level restaurant, retail or consumer experience in the United States" "possesse[d]" by an appointee who satisfies the Deemed-Acceptable Prong, Appointment Clause, must still "be relevant to the CEO or CFO role, as applicable," in a manner that satisfies "the separate 'qualifications' requirement" of the Reasonably-Acceptable Prong. Opp. at 17. In other words, "just because a person's experience is deemed acceptable, that does not automatically mean that her qualifications are acceptable as well." Opp. at 5. But, as Fortress acknowledges, the Deemed-Acceptable Clause deems the ***appointee*** acceptable—"not merely [his] experience." Opp. at 17.

The Court's ruling is, of course, subject to change if warranted as the case unfolds. *See Luce v. United States*, 469 U.S. 38, 41 (1984). In the meantime, however, neither of Fortress' readings of the unambiguous Appointment Clause make sense or render the proffered testimony relevant. If an appointee has "substantial executive level restaurant, retail or consumer experience in the United States," then he is "deemed reasonably acceptable" for his role, and there is no occasion to scrutinize his "qualifications." Appointment Clause. Evidence relevant only under some alternative reading of the Appointment Clause will not be admitted at trial.

## CONCLUSION

The Motion is GRANTED in part. The Clerk of Court is respectfully requested to terminate docket entry number thirty-eight.

**SO ORDERED.**

**Date: October 7, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**